<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| FREDY C., <br>                 Plaintiff, <br> v. <br> COMMISSIONER OF SOCIAL SECURITY, <br>                 Defendant. | Civil Action 24-10438 (SDW) <br><br> **OPINION** <br><br> October 8, 2025 |

**WIGENTON**, District Judge.

Before this Court is Plaintiff Fredy C.'s ("Plaintiff")[1] appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner") with respect to Administrative Law Judge Trina Moore's ("ALJ")[2] denial of Plaintiff's claim for Social Security Disability Insurance ("SSDI"). (D.E. 1.) This Court has subject matter jurisdiction pursuant to 42 U.S.C. § 405(g). Venue is proper under 42 U.S.C. § 405(g). For the reasons stated herein, this Court **REMANDS** this matter for further review.

I.     PROCEDURAL AND FACTUAL HISTORY

    A. Procedural History

On June 14, 2022, Plaintiff filed an application for SSDI, alleging disability beginning on June 3, 2022, based on back problems, hearing loss, a torn rotator cuff, gastrointestinal issues, left knee surgery, sleep apnea, and post-traumatic stress disorder ("PTSD"). (R. 97.) The Social

---

[1] Plaintiff is identified only by his first name and last initial in this opinion, pursuant to Standing Order 2021-10, issued on October 1, 2021, available at https://www.njd.uscourts.gov/sites/njd/ files/SO21-10.pdf.

[2] The first two hearings were conducted by ALJ Andrea Addison, but the final hearing was conducted by ALJ Trina Moore. (D.E. 4, Administrative Record ("R.")) at 25, 30, 42, 63, 95.)

1

Security Administration ("SSA") initially denied the claim on September 21, 2022, and again upon reconsideration on November 25, 2022. (R. 112, 117.) Defendant requested a hearing on December 8, 2022, and attended three separate hearings *pro se* on May 17, August 16, and November 13, 2023. (R. 30, 42, 63, 147.)

On January 31, 2024, the ALJ rendered an unfavorable decision, finding Plaintiff was not disabled. (R. 8.) The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final determination. (R. 1.) After exhausting all administrative remedies, Plaintiff appealed to this Court, filing a supporting brief on March 17, 2025. (D.E. 1; D.E. 7.) [3] The SSA filed its response on April 14, 2025, and Plaintiff replied on May 22, 2025. (D.E. 9; D.E. 14.) On August 5, 2025, Plaintiff filed supplemental notice (D.E. 15) indicating that his request for benefits was approved as of February 1, 2024, which reduced the period at issue in this matter to June 3, 2022, through January 31, 2024.

    **B. Factual History**

        **i. Background**

Plaintiff was born on January 3, 1973, and was forty-nine years old on the alleged onset date. (R. 105.) From 1992 to 2022, Plaintiff was employed in various roles; he served in the Navy for two years, worked in transportation and trucking warehouses, was a lawn care technician, maintenance technician, and an account manager. (R. 276.) His work in the Navy, warehouses, and lawn care involved regular lifting of up to fifty pounds, as well as prolonged walking, standing, and handling of large objects. (R. 280, 281, 282.) His work in the last five years as a maintenance technician and account manager required less physical exertion but still involved lifting up to twenty-five pounds, walking for at least two hours, and sitting for more than three hours per day.

---

[3] Plaintiff is now represented by counsel.

(R. 277–79.)  Plaintiff stopped working the day before his onset date and now alleges that he can lift only five to ten pounds, cannot sit for more than ten to fifteen minutes, needs assistance with daily activities, and is unable to walk more than a block.  (R. 19–20, 75.)[4]

### ii. Medical Information

Plaintiff received treatment for various ailments documented through the Department of Veterans Affairs' ("VA") medical records spanning from February 2021 through August 2023.  These records identify multiple conditions, including allergic rhinitis, bilateral carpal tunnel syndrome, chronic PTSD, gastroesophageal reflux disease, lower back pain, mechanical lower back pain, mixed hyperlipidemia, neck pain, overweight status, Vitamin D deficiency, and cervicalgia.  (R. 350–1300, 353–54, 362.)  Additionally, doctors have noted issues including disc herniation and stenosis at multiple levels, knee pains, tinnitus, a left knee arthroscopy, lumbar radiculopathy, mild to moderate osteoarthritis in the right hip, chronic pain in various areas of the body, migraines, and alcohol and other substance abuse disorders.  (R. 376, 377, 636, 1070.)  Plaintiff also notes a traumatic brain injury ("TBI") he suffered while in naval training.  (R. 1326.)

The VA has listed the Plaintiff as possessing a 100% disability in connection to military service based upon his PTSD (100%), knee condition (20%), limited motion of arm (20%), sleep apnea syndrome (30%), hiatal hernia (10%), limited flexion of knee (10%), tinnitus (10%), and limited extension of knee (10%).  (R. 722.)

Plaintiff has taken various medications during the relevant treatment period, as documented in VA medical records.  This includes, but is not limited to, artificial tears, vitamin D supplements, fluoxetine for PTSD, hydroxyzine for anxiety, simvastatin for cholesterol, an albuterol inhaler for breathing, azelastine for allergies, sumatriptan succinate for headaches, and several medications

---

[4] There are discrepancies in Plaintiff's testimony and information reported in his application with regard to his ability to lift weights at previous jobs. *Compare* (R. 19–20) to (R. 277.)

3

for pain management, including pantoprazole, lidocaine, Lidoderm patches, and meloxicam. (R. 356–57, 359, 362, 377, 474–76, 547, 596, 632.)

### 1. Physical Ailments

To treat his back, neck, and various other pains, Plaintiff has had appointments with pain management clinics, chiropractors, acupuncturists, physical therapists, and pain psychologists, indicating periods of improvement but a general increase in pain throughout the years. (*See, e.g.,* R. 355, 430, 681, 872, 908, 1081.)

With respect to Plaintiff's lower back and neck problems, he indicated that his pain began while working for the Navy. (R. 395.) Diagnostic medical records predating the highlighted treatment period show a narrowed disc space at L2/L3 and osteophytes at multiple levels. (R. 431, 684–86.) On March 5, 2021, Plaintiff visited Nurse Practitioner Chinwe Obasi APN-BC, for chronic pain in his lower back, neck, cervical radiculopathy, and shoulder pain. (R. 436.) Plaintiff described his pain as a constant dull ache in his lower back that is worsened with physical activity. (R. 436.) A CT scan dated March 19, 2021, reflects a progression of degenerative changes since 2018 and severe stenosis of the left neural foramen at the C6–C7 level. (R. 690–91.)

In February 2021, Plaintiff's ongoing care physician, Dr. Gilda Restrepo, APN-C, noted that Plaintiff's chronic neck pain might be a trigger for his migraines and bilateral arm weakness, but that his pain was not interfering with his daily life. (R. 1067, 1068.) On August 4, 2021, Plaintiff reported to Pain Management Specialist Dr. Benjamin Levy, M.D. that he was experiencing pain radiating from his neck and lower back through all five fingers and into both legs, as well as numbness and tingling during prolonged sitting. (R. 430.) Dr. Levy diagnosed him with chronic pain in the back, hip, knees, and shoulders with radicular symptoms and recommended biofeedback therapy and acupressure. (R. 432.)

In a psychiatric evaluation on November 18, 2021, Plaintiff told Pain Psychologist Dr. Marc Murphy, Ph.D., that his lower back pain level was consistently at a 7 to 8 out of 10 and described it as "debilitating." (R. 396–97.) During a physical therapy session on September 23, 2022, Plaintiff rated his lower back pain at a 9 out of 10 at its highest and indicated use of marijuana and a cane to manage the worst effects. (R. 642–43.)

At an appointment on October 13, 2022, Plaintiff told Dr. Levy that he needed to use a cane to move longer distances, he had minimal pain relief with Advil, was hesitant to begin stronger medication, and frequently used alcohol and marijuana. (R. 636–37.) Examinations show Plaintiff exhibited restricted lumbar rotation to both the left and right, slump testing and oblique extensions that were limited by pain, and a normal gait. Dr. Levy diagnosed Plaintiff with lower back pain and lumbar radiculopathy. (R. 637–38.)

On October 19, 2022, Plaintiff went to the emergency room with lower back pain, reporting his pain level as 10 out of 10. (R. 633–35.) Dr. Adaeze Wu, M.D, believed the root of Plaintiff's pain was his ongoing lumbar radiculopathy issues, but his examination did not indicate anything inconsistent with previous findings. (R. 631–32.) On January 23, 2023, X-ray imaging of Plaintiff's back revealed mild facet arthropathy of the lumbar spine at L5–S1. (R. 681.) On June 6, 2023, Plaintiff was evaluated by Pain Management Specialist Dr. Evan Hyun-Jin Chung for worsening axial back pain. Physical examination showed a limited range of motion in flexion and extension due to pain. (R. 751–53.) Dr. Chung found no signs of myelopathy or neurologic deficits and recommended continued physical therapy. (*Id.*)

With respect to Plaintiff's knee problems, medical records from December 2016 show a left knee arthroscopy. (R. 851.) The next mention of Plaintiff's knee issues is in his August 4, 2021, visit to Dr. Levy, where he reported chronic knee pain. (R. 430.) On January 12, 2023, Dr.

Restrepo noted Plaintiff's history of knee issues but found a steady gait. (R. 852.) On March 7, 2023, Plaintiff visited Dr. George De Gruchy, M.D., due to right knee and hip pain exacerbated by exercise. (R. 813–16.) Dr. De Gruchy observed a mildly antalgic gait and noted tenderness to palpation over the peripatellar and anteromedial aspects of the right knee, with a full range of motion and a negative McMurphy's test. (*Id.*) Clinical examination also revealed positive Thomas, Ober, and Ely tests, and Dr. De Gruchy recommended continued physical therapy. (*Id.*) Throughout subsequent records, Plaintiff attended physical therapy appointments; he reported the ability to play soccer with only limited flare-ups of knee pain. (R. 1102.)

With respect to Plaintiff's hip pain, a CT scan of the pelvis dated August 20, 2021, revealed: mixed lucency and sclerosis involving the subchondral medial aspect of the right femoral head; mild osteoarthritis in the right hip; a cyst; and other indicators of prior trauma. (R. 685.) In April 2022, during a primary care visit, Plaintiff reported hip pain at a level of 9 out of 10. (R. 544.) He again referenced hip pain during his visit with Dr. De Gruchy, reporting a pain level of 7 out of 10 associated with physical activity. (R. 810–16.) During that examination, Dr. De Gruchy observed that Plaintiff had a full range of motion in his hips and ankles and noted no other significant abnormalities. (*Id*.) At the October 13, 2022, visit, Dr. Levy stated that hip imaging suggested possible avascular necrosis related to alcohol use. (R. 1223.)

Plaintiff's vision problems are demonstrated through various appointments throughout the relevant treatment period; he was diagnosed with dry eye syndrome, meibomian gland dysfunction, a history of color deficiency and presbyopia. (R. 356, 380, 509, 783, 981–84, 1069, 1072.) These problems have persisted throughout many visits. (*Id*.) On June 19, 2023, Plaintiff was involved in a motor vehicle accident. He was reported to ambulate easily, with only mild tenderness in the cervical paraspinal musculature, and no significant changes in condition

compared to prior evaluations. (R. 731–33.) On September 12, 2022, State Examiner Lenoard Nicosia, observing all reported physical issues, found that Plaintiff possessed no severe physical disabilities. (R. 98–99.)

### 2. Mental Health Issues

With respect to his mental health history, Plaintiff reported receiving support from the VA since approximately 2015, 2016, or 2017. (R. 85.) He was diagnosed with PTSD by Dr. Juan Falcon, M.D., in 2017, and in the relevant period, met with him several times from February 2021 through April 2023. (R. 789, 1073–1074.) During these sessions, Dr. Falcon noted that Plaintiff experienced occasional anxiety and depression. (R. 359, 389–90, 393, 426, 619, 649.) Mental status reports show that he had an anxious to appropriate effect, maintained good eye contact, exhibited spontaneous, coherent, and relevant speech, spoke with a normal tone and rate of voice, and showed no evidence of a gross thought disorder or psychotic symptoms. (*Id*.) Additionally, Plaintiff demonstrated an average fund of knowledge, good insight and judgment, and intact recent and remote memory skills. (*Id*.)

Plaintiff also engaged in regular mental health counseling, first with therapist Dr. Lori Magda, Ph.D., from January 2022 through August 8, 2022, and subsequently with Dr. Dabiri Torres Estevez, Ph.D., from August 9, 2022, through December 2022. (R. 1301–14, 1314–20.) Throughout these therapy sessions, Plaintiff reported experiencing anxiety, depression, substance abuse issues, anger, impulsivity, and an inability to watch the news due to the conflict in Ukraine. (R. 1308–11, 1317, 1319.) He reported using marijuana during this period as a coping mechanism for personal tragedies, excessive drinking, and expressed anxiety related to marital and financial stressors. (R. 1309, 1312, 1317, 1318.) In these sessions, Plaintiff talked about dropping his

daughter off at college, visiting his mother in Colombia, and planning a birthday party for his wife. (R. 1311, 1313, 1306.)

In addition to his counseling, on June 6, 2022, Plaintiff was hospitalized due to depression, anxiety, and chest pain. (R. 361.) He reported having low mood, poor energy, difficulty with concentration, increased anxiety, trouble sleeping, and felt as if he was being conspired against at work. (*Id*.) His diagnoses included PTSD and unspecified anxiety. (R. 363.)

Absent from the Administrative Record, Plaintiff was evaluated for a traumatic brain injury on April 25, 2024, by Dr. Yousaf Chowdhry, M.D., for the TBI Disability Benefits Questionnaire included in the VA's Compensation and Pension Report ("C&P"). (D.E. 14–2.) Plaintiff reported he suffered head trauma from an incident during his naval training in 1992, and has had worsening symptoms since that date. (*Id.* at 3.) Dr. Chowdhry found the following supporting evidence of a TBI: forgetfulness, moderately impaired judgment, occasionally inappropriate social interaction, headaches, and disorientation. (*Id.* at 4–6.)

Plaintiff was also evaluated by Dr. Norman Weistuch as part of the PTSD Disability Benefits Questionnaire included in the VA's C&P Report on June 23, 2022. (D.E. 14–1.) This evaluation also was not included in the administrative record. In his assessment, Dr. Weistuch noted symptoms including forgetfulness, obsessive security-related thoughts, recurrent depression, and generalized anxiety. (*Id.* at 3–5.) Dr. Weistuch concluded that Plaintiff suffered from total social and occupational impairment due to his mental health conditions, though he was unable to isolate the exact conditions responsible. (*Id.* at 2.) His determination was based on Plaintiff's inability to stay on task, be around coworkers, difficulty following instructions, intrusive thoughts, and other cognitive and functional impairments. (*Id.* at 5–6.)

In contrast, State Agency Examiner Dr. Michael Neboschick, Ph.D, reported Plaintiff had mild limitations to understand, remember, or apply information and concentrate, persist, or maintain pace; in addition to moderate limitations to interact with others and adapt/manage oneself. (R. 101–03.) These results were echoed by psychologist Carmen Pineiro. (R. 104.)

## II.     LEGAL STANDARD

### A. Standard of Review

In social security appeals, district courts have plenary review of legal issues decided by the ALJs but must uphold factual findings supported by substantial evidence. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000); 42 U.S.C. § 1383(c)(3); 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla" and is explained as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938). Under the substantial evidence standard, an ALJ's determinations cannot be set aside merely because this Court may have reached a different conclusion based upon the same facts. *See Hunter Douglas Inc., v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986). As long as the ALJ sufficiently develops the record and explains its findings to permit meaningful review, the ALJ need not use "particular language or adhere to a particular format" when conducting analysis. *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). In instances where a claimant is not represented by counsel, the ALJ has a heightened duty to develop the record. *Reefer v. Barnhart*, 326 F.3d 376, 390 (3d Cir. 2003). When a claimant attends a hearing *pro se*, "the ALJ must 'scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.'" *Id.* (quoting *Key v. Heckler,* 754 F.2d 1545, 1551 (9th Cir. 1985). Although there are no rigid procedures the ALJ must follow to adequately develop the record, the ALJ must assist the claimant where necessary, depending on the circumstances of the

9

case. *Id*. Claimants' lack of counsel can be grounds for remand or reversal even if the claimant waived their right to representation if it clearly resulted in prejudice. *See Livingston v. Califano*, 614 F.2d 342, 345 (3d Cir. 1980).

### B. The Five-Step Disability Test

To make a disability determination, the ALJ follows a five-step sequential analysis. 20 C.F.R. § 404.1520(a); *Hess v. Comm'r of Soc. Sec.*, 931 F. 3d 198, 201–03 (3d Cir. 2019). The ALJ must determine if the claimant: **(1)** is currently engaged in substantial gainful activity ("SGA"); **(2)** has a "severe" and "medically determinable" impairment; and **(3)** has an impairment or combination of impairments, that is equal to or exceeds one of those included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P Appendix 1, 20 C.F.R §§ 404.1520(a)(4)(i)–(iii). Before continuing to the fourth step, the ALJ considers the claimant's residual functional capacity ("RFC"), which is "the most [the claimant] can still do despite [his or her] limitations" as it relates to meeting "the physical, mental, sensory and other requirements of work." *Id.* §§ (a)(4)(iv), 404.1545(a)(4). **(4)** With a completed RFC, the ALJ determines whether the claimant can still do his or her past relevant work by comparing his or her RFC to "the physical and mental demands of … past relevant work", *Id.* §§ (a)(4)(v), (f); **(5)** Lastly, the ALJ decides whether the claimant "can make an adjustment to other work" considering his or her RFC, age, education, and work experience. *Id.* § (a)(4)(v). The claimant bears the burden of proof at all steps except step five, where the burden is on the commissioner. *Hess*, 931 F. 3d at 201.

### III. DISCUSSION

#### A. The ALJ's Decision

On January 31, 2024, the ALJ issued a decision concluding Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act. (R. 25.) At step one, the ALJ found that

Plaintiff had not engaged in substantial gainful activity since the alleged onset date of June 3, 2022. (R. 14.)  At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease in the lumbar and cervical spine, PTSD, generalized anxiety disorder, and drug/alcohol abuse. (*Id.*)  The ALJ also found that Plaintiff's hyperlipidemia and GERD were non-severe medical determinable impairments, since they presented minimal effect on the Plaintiff's abilities. (*Id.*)  Similarly, the ALJ determined Plaintiff's sleep apnea, torn rotator cuff, vision issues, and history of left knee surgery were not severe since they had a low impact on his ability to work. (R. 14–15.)

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that equals or exceeds the severity of a listed impairment in 20 C.F.R. Part 404 Subpart P, Appendix 1 (20 C.F.R. 404.1420(d), 404.1525, and 404.1526). (R. 17.)  The ALJ found that the record does not establish that Plaintiff has a need for an ambulatory device or that he is unable to use his upper extremities to independently initiate or sustain workplace activities. (*Id.*)  The ALJ also found that Plaintiff has moderate mental limitations in understanding, remembering, or applying information; interacting with others; concentrating persistently or maintaining pace; and adapting or managing oneself. (R. 17–18.)  Since these impairments do not cause two marked limitations or one extreme limitation, the paragraph B criteria were not met. (R. 18.)

Next, the ALJ found that the Plaintiff had the RFC to perform a full range of work at all exertion levels but with a few non-exertional limits. (R. 19.)  These limits include:

> Claimant can never climb ladders, ropes, scaffolds, or crawl. The claimant must avoid concentrated exposure to hazards such as unprotected heights and moving mechanical parts. The claimant retains the ability to carry out simple routine tasks on a continuous basis with simple instructions and simple work-related decisions. The claimant is limited to no assembly line or production rate pace work and no work in tandem. The claimant is limited to occasional interaction with co-workers and supervisors and no constant interaction with the public in a customer service

setting. The claimant is able to tolerate occasional changes in the work setting and work processes.

(*Id.*)  The ALJ reached this conclusion based on the raw medical records and physicians' notes, which were found to contradict Plaintiff's testimony regarding the severity of his pain.  (R. 19–20.)  However, the ALJ gave less weight to the opinions of the state examiner (who found Plaintiff had no severe physical disabilities), acknowledging that a complete dismissal of Plaintiff's reported pain was not warranted in light of his extensive medical history.  (R. 23.) Additionally, the ALJ recognized limitations in Plaintiff's ability to interact in a workplace setting based on an analysis of his psychiatric records and expert reports.  (*Id.*).

At step four, the ALJ determined Plaintiff could not perform his previous work as an account manager and a groundskeeper since these jobs required semi-skilled labor and he could only handle consistent and routine tasks.  (R. 24.)  Next, at step five, the ALJ determined — based on the testimony of the vocational expert — that Plaintiff's RFC allows him to complete work as a Janitor, Dishwasher, and a Packager, and these jobs exist in a significant amount in the national economy.  (R. 25.)  The ALJ thus concluded that the Plaintiff was not disabled under the Act during the relevant period.  (*Id.*)

### B. Analysis

On appeal, Plaintiff seeks a reversal and remand of the Commissioner's decision.  (D.E. 7 at 45.)  Plaintiff argues that: (1) the ALJ failed to properly develop the record by not obtaining the VA C&P Report; (2) the RFC was the product of a lay evaluation and not supported by substantial evidence; (3) the ALJ should have obtained a updated medical assessment; and (4) the Commissioner failed to meet their burden of establishing other work in the national economy Plaintiff could perform.  (*Id.*).

### i. Failure to Properly Develop the Record

Plaintiff first argues that this matter should be reversed since the ALJ failed to include the VA C&P Report in the record. Plaintiff maintains that the report contained underlying evidence essential for evaluation of the VA's disability rating, and the failure to obtain those documents is a violation of the ALJ's heightened duty to develop the record with a *pro se* claimant. This Court agrees.

In examining whether a claimant is disabled, the evidence underlying administrative findings of other government organizations are often relevant. *Michael B v. Kijakazi,* Civ. No. 20-14639, 2022 WL 3913302, at *7 (D.N.J. Aug. 31, 2022). While the disability determinations of other government agencies themselves are not binding on the SSA, "all of the supporting evidence underlying the other government agency['s] … decision that [was received] …" must be considered. 20 C.F.R. § 404.1504; *Morrison v. Apfel*, 146 F.3d 625, 628 (8th Cir. 1998); *Michael B*, 2022 WL 3913302, at *7. The underlying records used to make those determinations are often just as essential to the SSA analysis as they were for the other agency. *See Mandrell v. Kijakzi*, 25 F.4th 514, 518 (7th Cir. 2022) (finding the documentation underlying the VA's disability rating just as relevant for social security determination). When a claimant is *pro se,* an ALJ has a duty to secure all relevant medical documentation in order to fully develop the record. *Sheryl C. v. Kijakazi*, Civ. No. 20-20151, 2023 WL 2523654, at *7 (D.N.J. Mar. 15, 2023) (citing *Dobrowolsky v. Califano*, 606 F.2d 403, 407–08 (3rd Cir. 1979));. An apparent absence of said documentation may result in a remand if it clearly prejudices the plaintiff. *See Mowrer v. Kijakazi*, 686 F. Supp. 3d 764, 767 (S.D. Iowa 2023) (remanding matter when the ALJ failed to add the underlying documentation from a VA Disability rating to the record).

In the present case, Plaintiff was given a 100% disability rating by the VA for his PTSD and received a partial disability rating for other conditions. (R. 722.) Yet the ALJ mentioned the VA rating only to note that Plaintiff's sleep apnea, listed in part of the rating, was absent elsewhere in the record. (R. 15.) This indicates there is underlying documentation that was used to make disability determinations that was not included in the record despite its relevance. Plaintiff asserts that this missing piece of evidence is the C&P Report. (*See* R. 28–29.) This report is utilized by the VA to see if a claimant has a disability and if it is service-connected. In his reply brief, Plaintiff provided the report's TBI and PTSD questionnaires, documents that show relevant medical evidence during the alleged period of disability. (D.E. 14–1, 14–2.) For example, included in the PTSD questionnaire was the diagnosis that Plaintiff possessed a total social and occupational mental impairment based on a litany of reported criteria. (D.E. 14–1 at 2.) This diagnosis is in direct contrast with the State Examiner's finding that Plaintiff only possessed mild to moderate mental limitations. (R. 101–03.) This discrepancy suggests that the ALJ failed to adequately obtain all relevant evidence, leaving gaps in the analysis that unduly prejudiced Plaintiff.

The Commissioner argues that Plaintiff failed to show prejudice from this omission, citing *Ramazan K. v. Comm'r of Soc. Sec.*, Civ. No. 21-68448, 2024 WL 1328013 (D.N.J. Mar. 28, 2024). But unlike in *Ramazan K.*, Plaintiff has identified specific medical findings from the C&P Report that conflict with the ALJ's adopted evidence. Although the ALJ took certain steps to accommodate Plaintiff's pro se status (R. 74, 94), those efforts did not satisfy the heightened duty on these facts. Because Plaintiff was prejudiced by the absence of relevant VA documentation, remand is warranted. On remand, the ALJ should obtain and consider the C&P Report and any related VA records necessary to evaluate Plaintiff's claimed impairments.

### ii. Improper Reliance on Lay Analysis

Additionally, Plaintiff argues that the ALJ's reliance on their own lay opinion, without obtaining a medical assessment to support the RFC determination, constitutes error and is grounds for remand. Plaintiff asserts the ALJ failed to consider evidence on the record about Plaintiff's medical issues and did not consult or get an assessment by an expert. The ALJ concluded the Plaintiff had the severe medical condition of degenerative disc disease of the lumbar and cervical spine, but found that he had the capability to perform a full range of work with only moderate limitations.

While the ALJ is ultimately responsible for making the RFC determination, it must be grounded in the medical evidence of record, and the ALJ may not substitute their own lay interpretation of raw medical data in place of a competent medical opinion. *See Morales v. Apfel*, 225 F.3d 310, 319 (3d Cir. 2000). Although obtaining a consultative medical assessment is not strictly required in every case, an RFC generally cannot be supported where there is no medical expert opinion at all. *See Falu v. Kijakazi*, Civ. No. 21-1262, 2023 WL 6276708, at *4 (E.D. Pa. Jan. 24, 2022) (adopting R&R). In the present case, no medical expert explained how Plaintiff's severe impairments translated into the functional limitations described in the RFC and the ALJ did not adequately explain how the objective medical evidence supports the RFC assessment. Notably, the ALJ failed to mention or address several relevant diagnostic tests, including a July 23 X-ray, an April 19 CT scan, and a March 19 CT scan, all conducted before 2022. This omission further undermines the sufficiency of the RFC determination.

Accordingly, on remand, the ALJ should obtain and consider medical opinion evidence as appropriate and provide a reasoned explanation for how the objective medical evidence, including relevant diagnostic testing, supports the RFC finding.

## IV. CONCLUSION

Given that remand is appropriate, this Court need not address Plaintiff's remaining contentions. For the reasons set forth above, this matter is **REMANDED** for further proceedings consistent with this Opinion. An appropriate order follows.

 */s/ Susan D. Wigenton* 
**SUSAN D. WIGENTON, U.S.D.J.**

Orig:  Clerk
cc:     Parties